IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PAUL ALLEN GARCIA, KIRAH-SHANTEL GARCIA, AND KEANE BOBBY BRAUN,<br><br>                    Plaintiffs,<br>    v.<br><br>STATE OF HAWAII, ET AL.,<br><br>               Defendants. | CIV. NO. 22-00432 JMS-WRP<br><br>ORDER (1) GRANTING VARIOUS DEFENDANTS' MOTIONS TO DISMISS, ECF NOS. 68, 86, 88, AND 91; AND (2) GRANTING JOINDERS IN VARIOUS DEFENDANTS' MOTIONS TO DISMISS, ECF NOS. 69, 71, 73, 84, 85, 89, AND 108 |

**ORDER (1) GRANTING VARIOUS DEFENDANTS' MOTIONS TO DISMISS, ECF NOS. 68, 86, 88, AND 91; AND (2) GRANTING JOINDERS IN VARIOUS DEFENDANTS' MOTIONS TO DISMISS, ECF NOS. 69, 71, 73, 84, 85, 89, AND 108**

## I. INTRODUCTION

Plaintiffs Paul Allen Garcia, Kirah-Shantel Garcia, and Keane Bobby Braun (collectively, "Plaintiffs"), proceeding pro se, brought this action involving an alleged wrongful foreclosure against a wide array of defendants, to include the State of Hawaii, two state court judges and various lawyers or law firms, financial institutions, title companies, and loan servicers.  ECF No. 18.  Although the

Second Amended Complaint names 37 defendants, it provides little detail as to the

role each defendant played in the foreclosure process. *Id.* at PageID.194–196.[1]

Presently before the court are the following motions and joinders:

(1) Defendant Fidelity National Title Insurance Company and Title Guaranty of Hawaii, LLC's Motion to Dismiss Amended Complaint, ECF No. 68, with joinders by the Association of Apartment Owners of Kawaikini Estates and Saiva Siddhanta Church, ECF No. 69; SN Servicing, Corp., ECF No. 71; Ken Ohara, David McAllister, Zachery K. Kondo, and Aldridge Pite LLP, ECF No. 73; Peter Stone, Jenny J.N.A. Nakamoto, Sun Young Park, Robin Lyn Miller, Stephen J. Trimble, TMLF Hawaii, LLLC, Jason Cotton, Esq., and The Mortgage Law Firm, ECF No. 84; and Honolulu Information Service Inc., dba HONIFNO, ECF No. 85;

(2) County of Kaua'i - Department of Water's Motion to Dismiss Amended Complaint, ECF No. 86;

---

[1] Plaintiffs filed three versions of their Complaint, *see* ECF Nos. 1, 11, 18, the latter two of which are both titled "Amended Complaint." "As a general rule, when a plaintiff files an amended complaint, the amended complaint supercedes the original, the latter being treated thereafter as non-existent." *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) (citation and internal editorial and quotation marks omitted). Given Plaintiffs' pro se status, the court considers Plaintiffs' Second Amended Complaint, ECF No. 18, filed on March 14, 2023, as the operative Complaint in this action. The court does so to promote judicial economy even if Plaintiffs did not comply with Federal Rule of Civil Procedure 15(a), which only allows a party to "amend its pleading once as a matter of course" without obtaining leave to amend further.

Here, any motions to dismiss that are directed to a prior version of the Complaint are construed as being brought against the Second Amended Complaint, which appears to have in substance only added two additional defendants. *See, e.g.*, *Crawford v. Tilley*, 15 F.4th 752, 759 (6th Cir. 2021) ("[D]istrict courts may exercise their discretion and apply a pending motion to dismiss to portions of an amended complaint that are substantially identical to the original complaint.") (citations and quotation marks omitted); *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020) (agreeing that when district courts are "faced with an amended complaint, they may either deny a pending motion to dismiss as moot or consider the merits of the motion, analyzing the facts as alleged in the amended pleading"). This is an "approach that promotes judicial economy by obviating the need for multiple rounds of briefing addressing complaints that are legally insufficient." *Pettaway*, 955 F.3d at 303.

(3) State of Hawaii, Judge Kathleen Watanabe, Commissioner Jonathan J. Chun's Motion to Dismiss With Prejudice Amended Complaint, ECF No. 88, with a joinder by Judge Randal G.B. Valenciano, ECF No. 89; and

(4) Defendant Pennymac Corp.'s Motion to Dismiss Amended Complaint, ECF No. 91, with a joinder by Asset Acceptance LLC, ECF No. 108.

Although far from clear, the Second Amended Complaint includes allegations of violations of 42 U.S.C. § 1983 (count 1); due process (count 2); RICO[2] (count 9); and the Foreign Agent Registration Act, 22 U.S.C. § 612 (count 10). State law claims include allegations of conspiracy to commit real estate fraud (count 3); forgery (count 4); wrongful foreclosure (count 5); breach of contract (count 6); real estate fraud (count 7); obstruction of the administration of justice (count 8); slander of title (no specific count number associated with this claim); slander of credit (no specific count number associated with this claim); and infliction of emotional distress (no specific count number associated with this claim).[3] ECF No. 18. Among other relief, Plaintiffs seek damages in the amount of $60,000,000. *Id.* at PageID.207.

---

[2] The Second Amended Complaint does not specify whether the RICO claim is brought pursuant to federal or state law. Liberally construing the Amended Complaint, the court assumes that Plaintiffs attempt to allege a federal RICO claim.

[3] Given the breadth of Plaintiffs' Amended Complaint and the number of defendants included, it may violate Federal Rule of Civil Procedure 20. To name different defendants in the

(continued . . . )

The court first addresses Plaintiffs' federal claims.  Finding that some of the defendants are immune from suit and finding that the Second Amended Complaint otherwise fails to state any federal claim, the court DISMISSES the Second Amended Complaint as to those federal claims.  As set forth in more detail below, the court will provide Plaintiffs with an opportunity to file a supplemental memorandum of no more than five pages explaining how they could state a federal claim under § 1983 and/or RICO.

## II.  **BACKGROUND**

Although it is difficult to decipher the exact nature of Plaintiffs' injuries, or violations of federal laws, Plaintiffs appear to allege in their Second Amended Complaint that they fell victim to an illegal mortgage, deed fraud, and wrongful disclosure.  *See* ECF No. 18 at PageID.197–200.  In general, Plaintiffs' allegations center on a $686,250 mortgage loan, a subsequent foreclosure action which commenced in November 2015, and the sale of the home as a result of the foreclosure action in September 2022.  *Id*. at PageID.189–91.  Further, the Second Amended Complaint alleges that State of Hawaii Judge Kathleen Watanabe

---

same lawsuit a plaintiff must satisfy Rule 20, governing joinder of parties.  Rule 20(a)(2) allows joinder of defendants only if the following two requirements are met: (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (2) "any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2)(A)–(B); *Rush v. Sport Chalet, Inc.*, 779 F.3d 973, 974 (9th Cir. 2015).  Unrelated claims involving different defendants belong in different suits.  *See What v. Honolulu Police Dep't*, 2014 WL 176610, at *4 (D. Haw. Jan. 13, 2014).

entered an order of ejectment in February 2023.  *Id*. at PageID.191.  The Second

Amended Complaint fails to identify specific actions taken by specific defendants,

but instead often refers collectively to the "defendants" as taking certain actions, or

the "bank" as violating the law.  *Id*. at PageID.187–92.

### III.  <u>PROCEDURAL HISTORY</u>

On September 30, 2022, Plaintiffs filed their first Complaint.  ECF

No. 1.  On February 9, 2023, Plaintiffs filed an Amended Complaint and a Motion

for Temporary Restraining Order ("TRO") entitled "Emergency Motion for a

Temporary Restraining Order to Block Federal Funding to the State of Hawaii

Pursuant to the Spending Clause, Article 1, Section 8 Clause 1 of the United States

Constitution for Deprivation of Civil Rights Against State Citizens, and Affidavits

of State Citizens, Certificate of Service." [4]  ECF No. 11 and ECF No. 12.  On

February 15, 2023, the court denied Plaintiff's Motion for TRO.  ECF No. 14.  On

March 14, 2023, Plaintiffs filed a Motion for Reconsideration of the denial of their

Motion for TRO, ECF No. 17, as well as the Second Amended Complaint, ECF

No. 18.  On March 21, 2023, the court denied the Motion for Reconsideration.

ECF No. 56.

---

[4]  That motion sought to "block the state of Hawaii from receiving federal funding because the state/court policies and procedures violate the due process rights of the state citizens."  ECF No. 12 at PageID.152.

On April 5, 2023, Defendants Fidelity National Title Insurance Company and Title Guaranty of Hawaii filed a Motion to Dismiss, ECF No. 68,[5] which was joined by (1) Defendant Association of Apartment Owners of Kawaikini Estates, ECF No. 69, (2) Defendant SN Servicing Corporation, ECF No. 71, (3) Defendants Ken Ohara, David McAllister, Zachary Kondo, and Aldrige Pite, LLP, ECF No. 73, (4) Defendants Robin Lyn Miller, Jenny J.N.A. Nakamoto, Sun Young Park, Peter T. Stone, TMLF Hawaii LLLC, Stephen J. Trimble, ECF No. 84, and (5) Defendant Honolulu Information Service, Inc., ECF No. 85.

On April 28, 2023, Defendant County of Kaua'i - Department of Water, filed a Motion to Dismiss.  ECF No. 86.

On May 2, 2023, Defendants Jonathan J. Chun, State of Hawaii, and Judge Kathleen Watanabe filed a Motion to Dismiss, ECF No. 88, and Defendant Judge Randal G.B. Valenciano joined, ECF No. 89.

On May 3, 2023, Defendant PennyMac Corp. filed a Motion to Dismiss, ECF No. 91, which Defendant Asset Acceptance joined, ECF No. 108.

Although other similarly-situated Defendants have not filed dismissal motions or joinders of their own, the court *sua sponte* dismisses them for the same

---

[5]  The court construes and considers Plaintiffs' "Reply" to Defendants' Motion to Dismiss, as Plaintiffs' "Opposition."  ECF No. 87.  The court strikes Plaintiffs' additional "Reply" filed on May 04, 2023, ECF No. 94, as the deadline for Plaintiff to file an Opposition was on May 1, 2023.  *See* ECF No. 75.  Similarly, the court strikes Plaintiffs' two "Statement of Facts in Response" filed on June 6, 2023, ECF Nos. 112, 113, and Plaintiffs' "Opposition in Response," filed on June 16, 2022, ECF No. 115.

reasons discussed in this Order.  *See, e.g., Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A [d]istrict [c]ourt may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants . . . .").

## IV.  <u>STANDARDS OF REVIEW</u>

### A.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a motion to dismiss for lack of subject matter jurisdiction.  A challenge to the court's jurisdiction under Rule 12(b)(1) can be either "facial" or "factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A "facial" attack accepts the truth of the plaintiff's allegations but asserts that they "are insufficient on their face to invoke federal jurisdiction."  *Id*.  The court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the nonmovant's well pleaded factual allegations as true and drawing all reasonable inferences in the nonmovant's favor, the court determines whether the allegations are sufficient to invoke the court's jurisdiction.  *See, e.g.*, *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).

### B.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted."  A Rule

12(b)(6) dismissal is proper when there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners*, LLC, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).  Rule 12 is read in conjunction with Rule 8(a)(2), which "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must offer "more than labels and conclusions," and instead contain "enough factual matter" indicating "plausible" grounds for relief, not merely "conceivable" ones. *Banks v. N. Tr. Corp.*, 929 F.3d 1046, 1055–56 (9th Cir. 2019) (citing *Twombly*, 550 U.S. at 555–56).  And in a 12(b)(6) analysis, the court accepts as true the material facts alleged in the complaint and construes them in the light most favorable to the nonmovant. *Steinle v. City & Cnty. of S.F.*, 919 F.3d 1154, 1160 (9th Cir. 2019) (citation omitted).

## C.   Pro Se Pleadings

Because Plaintiffs are appearing pro se, the court liberally construes the Second Amended Complaint and resolves all doubts in Plaintiffs' favor.  *See*

*Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (explaining that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers"); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (per curiam).

## V. DISCUSSION

As set forth below, the court first analyzes whether the State of Hawaii, State of Hawaii Judges Kathleen Watanabe and Randal Valenciano, and a court-appointed foreclosure commissioner, Jonathan J. Chun, are immune from suit. Finding that they are, the court then turns to each federal question claim alleged in the Second Amended Complaint relating to the remaining Defendants and determines that each of these claims fail.

### A. The State of Hawaii, State Court Judges, and Court-Appointed Foreclosure Commissioner[6]

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official

---

[6] Although the Second Amended Complaint contains some detail as to Judge Watanabe's role in the foreclosure action, it is silent as to the roles of Judge Valenciano and Jonathan J. Chun. The State Court docket sheet in the foreclosure action, Case No. 5CC151000158, shows that Judges Watanabe and Valenciano were each assigned to the case at certain times, while Jonathan J. Chun was the court-appointed commissioner tasked with selling the property. *See* eCourt Kokua, https://www.courts.state.hi.us/legal_references/records/jims_system_availability (pressing "Click here to Enter eCourt* Kokua" and entering Case ID "5CC151000158" in the Case Search tab) (last visited June 21, 2023). The court takes judicial notice of these state court proceedings. *See Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011) (stating that a court "may take [judicial] notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (citation omitted).

capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citation omitted); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–03 (1984).  As to claims against a State, "[t]he Eleventh Amendment jurisdictional bar applies regardless of the nature of relief sought," absent unequivocal consent by the state.  *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ*., 616 F.3d 963, 967 (9th Cir. 2010).  "Hawaii has not unequivocally waived its sovereign immunity," *Thompson v. Paleka*, 2017 WL 5309608, at *4 (D. Haw. Nov. 13, 2017), and Congress has not overridden that immunity for civil rights actions brought pursuant to 42 U.S.C. § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).  Thus, any claim against the State of Hawaii is barred by the Eleventh Amendment.

To the extent Plaintiffs seek damages from Judges Watanabe and Valenciano in their official capacities, any such claims are also barred by the Eleventh Amendment and DISMISSED without leave to amend.  *See Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) ("The Eleventh Amendment bars claims for damages against a state official acting in his or her official capacity." (citation omitted)).

Further, "[i]t is well settled that judges are generally immune from suit for money damages." *Lund v. Cowan*, 5 F.4th 964, 970 (9th Cir. 2021) (internal quotation marks and citation omitted).  "[J]udicial immunity ensures that

challenges to judicial rulings are funneled through more efficient channels for review like the appellate process." *Id*. at 971. "Judicial immunity also serves the goal of judicial independence." *Id*. "Subjecting judges to liability for the grievances of litigants would destroy that independence without which no judiciary can be either respectable or useful." *Id*. (internal quotation marks and citation omitted).

Although judicial immunity applies only to judicial acts—and not to administrative, legislative, or executive functions that judges may sometimes perform—courts have a "broad conception of what constitutes a judicial act." *Id*. Thus, a judicial act does not stop being a judicial act "even if the judge acted with malice or corruption of motive." *Id*. at 972 (internal quotation marks and citation omitted); *see also Mireles v. Waco*, 502 U.S. 9, 11 (1991) ("[J]udicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial.").

Similarly, quasi-judicial immunity applies equally to Jonathan J. Chun, the court-appointed commissioner.[7]  *Mendoza Aquino v. Deutsche Bank Tr. Co. Americas as Tr. for Residential Accredit Loans, Inc., Mortg. Asset-Backed Pass Through Certificates, Series 2007 QH1*, 2019 WL 5789846, at *3 (D. Haw. Nov.

---

[7]  Plaintiffs identify Lorna A. Nishimitsu as an "Attorney, Commissioner."  ECF No. 18 at PageID.194.  To the extent Nishimitsu also served as a foreclosure commissioner, she is also entitled to quasi-judicial immunity.

6, 2019) (stating that any claim premised on a commissioner proceeding with an auction pursuant to the state court's foreclosure order is barred by the doctrine of quasi-judicial immunity); *see also New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1302–04 (9th Cir. 1989) (concluding that state court-appointed receivers are entitled to immunity); *Stafne v. Zilly*, 820 F. App'x 594, 595 (9th Cir. 2020) (determining that a sheriff responsible for executing a court-issued foreclosure order enjoys absolute quasi-judicial immunity); *Sakuma v. Ass'n of Apartment Owners of the Tropics at Waikele*, 2016 WL 6433842, at *9 n.5 (D. Haw. Oct. 28, 2016) (noting that claims against court-appointed foreclosure commissioners are barred by the doctrine of quasi-judicial immunity) .  In short, Judges Watanabe and Valenciano and Commissioner Jonathan J. Chun are immune from suit for damages.

This common law judicial immunity does not specifically "preclude a court from granting declaratory or injunctive relief."  *Moore v. Urquhart*, 899 F.3d 1094, 1104 (9th Cir. 2018) (citing *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984)). Nevertheless, Congress extended judicial immunity by statute by amending § 1983 in 1996 "to limit the circumstances in which injunctive relief may be granted against judges."  *Id*.  Specifically, § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person

within the jurisdiction thereof to the deprivation of any
rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party injured
in an action at law, suit in equity, or other proper
proceeding for redress, *except that in any action brought
against a judicial officer for an act or omission taken in
such officer's judicial capacity, injunctive relief shall not
be granted unless a declaratory decree was violated or
declaratory relief was unavailable*.

42 U.S.C. § 1983 (emphasis added).

The emphasized language is directly on point, and Plaintiffs' Second

Amended Complaint does not allege that "a declaratory decree was violated or that

declaratory relief was unavailable."  Indeed, the court understands that state court

proceedings are ongoing, and Plaintiffs certainly have an opportunity to appeal

decisions made in the circuit court.  *See, e.g.*, *Agbannaoag v. Honorable Judges of

Circuit Ct. of First Cir. of Haw*., 2013 WL 5325053, at *3 (D. Haw. Sept. 20,

2013) ("Declaratory relief against a judge for actions taken within his or her

judicial capacity is ordinarily available by appealing the judge's order [in state

court].") (quoting *La Scalia v. Driscoll*, 2012 WL 1041456, at *7 (E.D.N.Y. Mar.

26, 2012)); *Gilliam v. Watanabe*, 2020 WL 5223778, at *4 (D. Haw. Sept. 1,

2020), *aff'd*, 859 F. App'x 765 (9th Cir. 2021); *Burns v. Hawaii*, 2023 WL

2814623, at *3 n.5 (D. Haw. Apr. 6, 2023).  Any claim for injunctive relief against

Judges Watanabe and Valenciano is DISMISSED without leave to amend.

**B.     The § 1983 Claim**

            To state a claim under 42 U.S.C. § 1983, a plaintiff must allege:

(1) that a right secured by the Constitution or laws of the United States was

violated; and (2) that the alleged violation was committed by a person acting under

color of state law.[8]  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  Section 1983

requires a connection or link between a defendant's actions and the plaintiffs'

alleged deprivation.  *See Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 692 (1978);

*Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976); *May v. Enomoto*, 633 F.2d 164,

167 (9th Cir. 1980).  "A person 'subjects' another to the deprivation of a

constitutional right, within the meaning of section 1983, if he does an affirmative

act, participates in another's affirmative acts, or omits to perform an act which he

is legally required to do that causes the deprivation of which complaint is made."

*Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).  Thus, a

plaintiff must allege that he suffered a *specific injury* because of a particular

defendant's conduct and must affirmatively link that injury to the violation of his

right.

---

            [8]  Although Plaintiffs allege a stand-alone due process claim, any due process claim must
be brought under § 1983.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) (stating that § 1983
provides a mechanism for enforcing individual rights secured by the constitution or laws of the
United States); *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992)
("Plaintiff has no cause of action directly under the United States Constitution.").

Although municipalities and other local government units are "persons to whom § 1983 applies," *Monell*, 436 U.S. at 690, a municipality can only be liable "for its own" constitutional violations. *City of Okla. City v. Tuttle*, 471 U.S. 808, 818 (1985) (quoting *Monell*, 436 U.S. at 683). That is, § 1983 does not impose liability on municipalities for constitutional violations committed by its employees under the theory of *respondeat superior*. *Id*. Rather, "*Monell* teaches that [a municipality] may only be held accountable if the deprivation was the result of municipal 'custom or policy.'" *Id*. at 817. "[T]he constitutional violation must be caused by 'a policy, practice, or custom of the entity,' or be the result of an order by a policy-making officer." *Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1139 (9th Cir. 2012) (citations omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citations omitted).

Further, to state a claim under § 1983, there must be "state action" or "action under color of state law." *See Lugar v. Edmondson Oil Co*., 457 U.S. 922, 935 n.18 (1982) ("[C]onduct satisfying the state-action requirement of the Fourteenth Amendment satisfies the statutory requirement of action under color of state law [under § 1983]."). This requirement "excludes from [§ 1983's] reach

merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quotation marks and citation omitted).

A private party may, under limited circumstances, act under color of state law when "he is a willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980); *Franklin v. Fox*, 312 F.3d 423, 444 (9th Cir. 2002) ("A private individual's action may be 'under color of state law' where there is 'significant' state involvement in the action.") (quoting *Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir. 1997)).  The Ninth Circuit recognizes "at least four different criteria, or tests, used to identify state action: '(1) public function;[9] (2) joint action;[10] (3) governmental compulsion or coercion;[11] and (4) governmental nexus.'"[12] *Kirtley*, 326 F.3d at 1092 (quoting *Sutton v.*

---

[9]  "Under the public function test, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Kirtley v. Rainey*, 326 F.3d 1088, 1093 (9th Cir. 2003).

[10]  To establish joint action, a plaintiff must show willful, joint participation between the state and a private actor in which "the state has so far insinuated itself into a position of interdependence with the private [actor] that it must be recognized as a joint participant in the challenged activity.  This occurs when the state knowingly accepts the benefits derived from unconstitutional behavior." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 926 (9th Cir. 2011) (citations and internal quotation marks omitted).

[11]  "The compulsion test considers whether the coercive influence or 'significant encouragement' of the state effectively converts a private action into a government action." *Kirtley*, 326 F.3d at 1094 (citation omitted).

(continued . . . )

*Providence St. Joseph Med. Ctr*., 192 F.3d 826, 835–36 (9th Cir. 1999)).

"Satisfaction of any one test is sufficient to find state action, so long as no

countervailing factor exists."  *Id*.  But under any of the four tests, "the central

question remains whether the alleged infringement of federal rights [is] fairly

attributable to the government."  *Id*. at 1096 (internal quotations omitted).

The Second Amended Complaint wholly fails to address *Monell*

liability.[13]  Here, even liberally construed, the Second Amended Complaint also

fails to allege any facts showing that the non-governmental Defendants acted under

color of law.  That is, there is no alleged infringement of federal rights that is fairly

attributable to the government.  Accordingly, Plaintiffs' § 1983 claim is

DISMISSED.

### C.   The RICO Claim

"The elements of a civil RICO claim are as follows: (1) conduct (2) of

an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate

acts') (5) causing injury to plaintiff's business or property."  *United Bhd. of*

---

[12]  "[T]he nexus test asks whether 'there is a such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself.'"  *Kirtley*, 326 F.3d at 1094–95 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).

[13]  While the Amended Complaint names the County of Kaua'i Department of Water, it contains no allegations of wrongdoing, let alone allegations of a sufficient municipal custom or policy under *Monell*.  As such, the Amended Complaint fails to state a § 1983 claim against the County of Kaua'i Department of Water.

*Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014) (quoting *Living Designs, Inc. v. E.I. Dupont de Nemours & Co*., 431 F.3d 353, 361 (9th Cir. 2005) (internal quotation marks omitted)).  The Second Amended Complaint contains no allegations that fulfill any of the RICO elements, and thus fails to state a RICO claim.

**D.    The Foreign Agent Registration Act**

The Foreign Agent Registration Act ("FARA")[14] has nothing to do with the facts alleged in the Second Amended Complaint.  Regardless, even if it did, courts have held that FARA creates no private cause of action, explicit or implied.  *See Dvoinik v. Rolff*, 2023 WL 3276398, at *2 (M.D. Fla. May 5, 2023) ("Nothing in the statutory scheme suggests an intent to create a private cause of action for FARA violations."); *Bey v. Epstein*, 2021 WL 8155603, at *4 (D. Conn. Aug. 6, 2021) ("[A] private right of action cannot be inferred from FARA."); *Meng v. Xinhaunet Co., Ltd*., 2017 WL 3175609, at *3 (S.D.N.Y. July 25, 2017) (same); *Comm. for a Free Namibia v. S. W. Africa People's Org*, 554 F. Supp. 722, 725 & n.4 (D.D.C. 1982) (same).  Plaintiffs cannot bring a private cause of action under FARA, and thus that claim is DISMISSED without leave to amend.

---

[14]  FARA creates registration requirements for those who act on behalf of foreign governments or other foreign entities in the United States.  22 U.S.C. § 612.  "No person shall act as an agent of a foreign principal unless he has filed with the Attorney General a true and complete registration statement and supplements thereto . . . or unless he is exempt from registration under the provisions of this subchapter."  *Id*.

For the foregoing reasons, all the federal claims in the Second Amended Complaint are DISMISSED.  Moreover, the dismissal applies not only to the moving and joining parties, but also to other, similarly-situated Defendants who have not appeared.  *See, e.g.*, *Silverton*, 644 F.2d at 1345 ("A [d]istrict [c]ourt may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants . . . ."); *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742–43 (9th Cir. 2008) ("As a legal matter, we have upheld dismissal with prejudice in favor of a party which had not appeared, on the basis of facts presented by other defendants which had appeared.") (citation omitted); *Omar v. Sea-Land Serv.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim sua sponte under [Rule] 12(b)(6).  Such a dismissal may be made without notice where the claimant cannot possibly win relief.") (citation omitted).

### E.   Leave to File a Supplemental Memorandum

Normally, "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action."  *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Lopez v. Smith*, 203 F.3d 1122, 1126 (9th Cir. 2000).  Here, the court seriously doubts whether an amendment to

the § 1983 and/or RICO claims could cure the defects identified in this Order.[15]

Nevertheless, given Plaintiffs' pro se status, the court will give Plaintiffs leave to

file a supplemental memorandum, consisting of no more than ten pages, describing

any further amended § 1983 and/or RICO claims that they believe would not be

barred by this Order.  The supplemental memorandum also must be specific as to

how each claim (whether § 1983 or RICO) would apply to each separate

Defendant.  That supplemental memorandum must be filed by **July 5, 2023**.

Thereafter, the court will review the memorandum to determine whether to allow a

Third Amended Complaint.  Failure to file a supplemental memorandum by **July**

**5, 2023**, will result in dismissal of the federal claims with prejudice.

### F.    Remaining State Law Claims

Having dismissed the federal claims, the only remaining claims are

state law claims over which the court has only supplemental jurisdiction (there is

no basis in the Second Amended Complaint for diversity jurisdiction).  *See* 28

U.S.C. § 1367(c)(3).  And under § 1367(c)(3), "district courts may decline to

---

[15]  Further, although not decided here, Plaintiffs' § 1983 and RICO claims may be barred by the statute of limitations.  Although 42 U.S.C. § 1983 itself contains no limitations period, the "relevant statute of limitations for federally created causes of action which do not provide their own filing periods is that of the state most connected with the action."  *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981).  "In Hawaii, the statute of limitations for actions under Section 1983 is two years from the date of the violation."  *Dusenberry v. Cnty. of Kauai*, 2007 WL 3022243, at *3 (D. Haw. Oct. 12, 2007) (quoting *Allen v. Iranon*, 99 F. Supp. 2d 1216, 1238 (D. Haw. 1999).  And the "statute of limitations for civil RICO actions is four years."  *Pincay v. Andrews*, 238 F.3d 1106, 1108 (9th Cir. 2001).

exercise supplemental jurisdiction [over state law claims] . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"  *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) ("[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Acri v. Varian Assocs., Inc*., 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (citation omitted).

Accordingly, because the dismissed federal claims provide the only basis for federal jurisdiction, the court does not address the state law claims in this Order.  If Plaintiff does not file a supplemental memorandum, the court will decline supplemental jurisdiction over the state law claims pursuant to § 1367(c) and will DISMISS them without prejudice to refiling in state court.  However, if Plaintiffs file a supplemental memorandum and if the court allows them to file a Third Amended Complaint, the court will retain jurisdiction over related state law claims and address them again if challenged at a later time.

# VI.  CONCLUSION

The State of Hawaii, Judges Watanabe and Valenciano, and

Commissioner Chun are DISMISSED without leave to amend, and the FARA

claim is likewise DISMISSED without leave to amend.  As set forth above,

Plaintiffs are granted leave to file a supplemental memorandum of no more than

ten pages explaining how they could file a Third Amended Complaint to state a

claim under § 1983 or RICO, and how either of those claims would relate to each

separate Defendant.  After reviewing Plaintiffs' supplemental memorandum, the

court will determine whether to permit Plaintiffs to file a Third Amended

Complaint.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 21, 2023.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Garcia, et al., v. State of Hawaii, et al.*; Civ. No. 22-00432 JMS-KJM; Order: (1) Granting
Various Defendants' Motions to Dismiss, ECF Nos. 68, 86, 88, and 91; and (2) Granting
Joinders in Various Defendants' Motions to Dismiss, ECF Nos. 69, 71, 73, 84, 85, 89, and 108